UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20298-CR-COOKE
Magistrate Judge Goodman

UNITED STATES OF AMERICA,

vs.

BRENDAN BUTLER,

      **Defendant.**
_____/

**FACTUAL PROFFER**

Had this case proceeded to trial, the United States would have proven beyond a reasonable doubt the following facts pertaining to count one of the Information, which charges a conspiracy to violate Civil Rights, in violation of Title 18, United States Code, Section 241.

From on or about March 27, 2017, and continuing through on or about March 28, 2017, defendant Brendan Butler ("Defendant") was a Sergeant with the Florida Department of Corrections ("FDOC") at the South Florida Reception Center ("SFRC") in Miami-Dade County, Florida. SFRC is a prison facility operated by the FDOC where inmates are housed in separate buildings, commonly referred to as dormitories.

The B-Dormitory, commonly known as the "Bravo" Dormitory, was comprised of three quads and was designated to house only Youthful Offenders ("YO") in order isolate and protect them from adult inmates incarcerated at SFRC. Inmates may be classified as YOs by a court when sentenced for committing a crime before their twenty-first birthday or, after being incarcerated, by FDOC if they are twenty-four years old or younger. Video security cameras were located inside the common area of Quad One of B-Dormitory but not outside this dorm in vicinity of an adjacent

room known as the "mop closet" cleaning equipment was stored. On March 27, 2017, YO 1, YO 2, and YO 3 were housed in Bravo Dormitory.

The E-Dormitory, known as "Echo" Dormitory, housed inmates in solitary confinement at SFRC. Correctional officers, with supervisory approval, could designate inmates for solitary confinement, for being disruptive or disrespectful. Video security cameras were located inside the common areas of E-Dormitory but not outside the dormitory in the vicinity of an adjacent room, commonly known as the "disciplinary review" ("D.R.") room.

On March 27 and 28, 2017, the defendant was a member of the Security 9 team at SFRC, along with two correctional officers. Security 9 members were not assigned to work in any particular dormitory but instead provided internal security and performed other functions in the common areas of SFRC. On March 27, 2017, one of the correctional officers working on the Security 9 team ("T.R.") told the defendant that a correctional officer assigned to Bravo Dormitory wanted assistance dealing with disorderly and disrespectful inmates. Thereafter, the defendant and T.R. went to Bravo Dormitory and were advised that YO 1, YO 2, and YO 3 were the disorderly and disrespectful inmates in question. The defendant told YO 3 to go outside and wait in the breezeway in the front of Bravo Dormitory and T.R. gave YO 1 and YO 2 the same instructions.

Outside of Bravo Dormitory, the defendant and T.R. approached the three YOs and the defendant told them to go into the mop closet in order to verbally counsel them in a more intimidating environment. Once inside the closet, the YOs lined up against the back wall facing the defendant and T.R. and the defendant attempted to talk with the YOs about disrespecting female correctional officers. After YO 1 laughed and talked back, the defendant slapped YO 1 in the face. In response, YO 1 tried to punch the defendant but missed, then attempted to tackle the

defendant. The defendant reached down and used both arms to secure YO 1 around the waist, then applied his weight, and brought YO 1 to the floor. While the defendant and YO 1 were physically engaged on the floor, the defendant told T.R. that this fight was a "one-on-one" and "don't jump in." A "one-on-one" is fight between one officer and one inmate, even if other officers are present and able to assist. Though one-on-ones specifically violate FDOC rules, this practice was commonplace at SFRC and was thought to be a means to establish respect within the facility and to resolve conflicts in lieu of sending inmates to confinement, the penalty for disorderly conduct actually sanctioned by FDOC. After the altercation started in the mop closet, T.R. took YO 2 and YO 3 out of the mop closet and then returned with a broomstick in his hand. The broomstick was physically used on YO 1 by T.R. (medical photos taken approximately four days later reflected large welts/bruises on YO 1's lower extremities) and the confrontation ended minutes later.

On the following day, when the defendant was arriving to work at SFRC, a correctional officer asked the defendant whether he was the subject of a rumor that YO 3 was spreading that, on the preceding day, an officer had been beaten up by YO 1 in Bravo Dormitory. After hearing this rumor, the defendant told T.R. and said that he wanted to see YO3 about this issue.

In the early afternoon of March 28, 2017, after YO 3 had been transported to solitary confinement—*i.e.*, Echo Dormitory—for allegedly being disrespectful that morning, the defendant and T.R. went to Echo Dormitory to visit YO 3. When they arrived in the yard of Echo Dormitory, YO 3 was already sitting handcuffed in the breezeway. T.R. removed the handcuffs and told YO 3 to walk to the D.R. room. Once inside the D.R. room, T.R. and YO 3 engaged in a "one-on-one." T.R. punched YO 3 in the stomach and other places causing YO 3 to fall to the floor. The defendant asked YO 3 why he was spreading false rumors about the mop closet incident. The defendant then

3

slapped and punched YO 3 a few times in stomach. After the defendant and T.R. were finished, YO 3 was placed in restraints and returned to a bench in the Echo Dormitory breezeway. The information contained in this proffer is not a complete recitation of the facts and circumstances of this case, but the parties agree that it is sufficient to prove the count one of the Information beyond a reasonable doubt.

Respectfully submitted,

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY

Date: 5/18/18    By: _____
ROBERT SENIOR
ASSISTANT UNITED STATES ATTORNEY

Date: 5/18/18    By: _____
GERA PEOPLES
ASSISTANT UNITED STATES ATTORNEY

Date: 5/18/18    By: _____
SAMANTHA TREPEL, TRIAL ATTORNEY
CIVIL RIGHTS DIVISION

Date: 5-18-18    By: _____
ERIC SCHWARTZREICH
ATTORNEY FOR DEFENDANT

Date: 05-18-18    By: _____
BRENDAN BUTLER
DEFENDANT

4